**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Roger Allen Sharp, | No. CV-23-00984-PHX-DJH (DMF) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| State of Arizona, et al., | |
| Respondents. | |

**TO THE HONORABLE DIANE J. HUMETEWA, UNITED STATES DISTRICT JUDGE:**

This matter is on referral to the undersigned for further proceedings and a report and recommendation pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure. (Doc. 9 at 4)[1]

On April 3, 2023,[2] Petitioner Roger Allen Sharp ("Petitioner"), who is confined in

---

[1] Citation to the record indicates documents as displayed in the official Court electronic document filing system maintained by the District of Arizona under Case No. CV-23-00984-PHX-DJH (DMF).

[2] The Petition was docketed by the Clerk of Court on June 1, 2023. (Doc. 1) The Petition was signed by Petitioner on April 3, 2023. (Doc. 1 at 17) This Report and Recommendation uses April 3, 2023, as the operative filing date of the Petition. *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010) ("A petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing."); *Melville v. Shinn*, 68 F.4th 1154, 1159 (9th Cir. 2023) (affirming that the prison mailbox rule "applies to pro se federal habeas petitions" on the date a petitioner signs, dates, and attests the petition was placed in the prison mailing system); *see also* Rule 3, Rules Governing Section 2254 Cases (petition is timely if deposited in prison mailing system on or before last day for filing, which may be shown by "declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement").

the Arizona State Prison Complex in Tucson, Arizona, filed a *pro se* "Writ of Coram Nobis, Writ of Error" ("Petition"). (Doc. 1) On July 17, 2023, the Court construed the Petition as filed under 28 U.S.C. § 2254, dismissed the Petition, and allowed Petitioner leave to file an amended petition within thirty days of the Court's Order. (Doc. 6 at 4-5)

In August 2023, Petitioner filed an Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) ("Amended Petition"). (Doc. 8) On November 3, 2023, the Court ordered Respondents to answer the Amended Petition. (Doc. 9 at 3-4) On January 10, 2024, Respondents filed their Answer to the Amended Petition. (Doc. 16) On January 22, 2024, Petitioner filed a reply. (Doc. 17)

On June 12, 2024, Petitioner filed a Motion to Compel Discovery (20) Disc's Audio-Video Footage From Prosecutor ("Motion to Compel"). (Doc. 18) On June 24, 2024, Respondents filed a response. (Doc. 20) On July 1, 2024, Petitioner filed a reply. (Doc. 23) On July 8, 2024, Petitioner filed a supplemental affidavit in support of his motion to compel discovery. (Doc. 24) On August 5, 2024, Petitioner's Motion to Compel was denied. (Doc. 29)

On June 19, 2024, Petitioner filed a motion entitled "Motion to Supplement Habeas Corpus – Claims by Citation Included." (Doc. 19) On July 15, 2024, Respondents filed a response. (Doc. 25) On July 22, 2024, Petitioner filed a reply. (Doc. 28) Petitioner's motion to supplement was addressed by separate Report and Recommendation recommending denial. (Doc. 30)

In July 2024, Petitioner filed a Motion for (FOIA) Freedom of Information Act. (Doc. 26) The Court denied Petitioner's Motion for (FOIA) Freedom of Information Act without prejudice to Petitioner bringing appropriate requests in the proper forum. (Doc. 27)

For the reasons set forth below, it is recommended that the Petition be denied with prejudice without an evidentiary hearing, that the Clerk of Court be directed to terminate this matter, and that a certificate of appealability be denied.

## I.    BACKGROUND

### A.  Charges, Plea, and Sentences

In its memorandum decision denying relief on the superior court's denial of Petitioner's fourth post-conviction relief ("PCR") proceedings in Maricopa County Superior Court case number CR2014-100040-002, the Arizona Court of Appeals summarized the events leading to the charges against Petitioner:

> In December 2013, officers responded to an armed robbery call. Two victims reported being robbed at gunpoint. The suspects fled the scene in a Chevy Impala. An emergency call broadcast was made, and Officer [Sefranka] located the Impala in traffic. [Sefranka] chased the Impala until the Impala collided with [Phillip Grigg's] truck.

> After the crash, one of the suspects fled. The other suspect, later identified as [Petitioner], exited the driver's side of the Impala. [Petitioner] and Officer [Sefranka] engaged in a physical struggle. [Grigg] intervened, trying to tackle [Petitioner]. During the struggle, [Petitioner] "gain[ed] full control of Officer [Sefranka's] service weapon." [Petitioner] fired the weapon, wounding [Sefranka] and [Grigg]. [Petitioner] fled and entered a residential neighborhood. He kicked in the front door of a residence, and the homeowner alerted the police. Police arrested [Petitioner] in a resident's backyard.

> In a post-arrest interview, [Petitioner] acknowledged his participation in the armed robbery and said he accidentally shot [Sefranka] and [Grigg]. In January 2014, the State charged [Petitioner] with four counts of aggravated assault, two counts of armed robbery, two counts of attempt to commit first-degree murder, and one count each of conspiracy to commit armed robbery, misconduct involving weapons, unlawful flight from law enforcement, resisting arrest, and criminal trespass.

> In May 2014, the police interviewed [Grigg]. He could not remember significant details from the shooting. [Grigg] "remember being in a scuffle with somebody, but did not remember any specifics nor did he remember how big the scuffle was." The State disclosed the police's interview summary report to [Petitioner's] counsel in August 2014 and the interview recording in October 2014.

> Consistent with its policy not to offer a plea without Division Chief approval for any case involving a firearm pointed or discharged at an officer in his or her official capacity, the State did not make a plea offer. In any event, [Petitioner] pled guilty to all charges in November 2014, admitting to the facts underlying each count. Relevant here, [Petitioner] admitted that he "discharged a weapon striking Officer [Sefranka]," [Grigg] "was also wounded by the discharge of the gun that [Petitioner] had gotten ahold of," and he knew or should have known that discharging the weapon was likely to cause the deaths of [Sefranka] and [Grigg]. [Petitioner] also admitted he was on felony probation during the offenses and had two prior felony convictions. In early 2015, the court sentenced [Petitioner] to concurrent and consecutive prison terms totaling 66.5 years.

> While serving his prison sentence, [Petitioner] learned that [Grigg] sued the

City of Phoenix and the Phoenix Police Department (collectively, "the City") in December 2014 for alleged negligence during the shooting. [Grigg] had submitted a notice of claim with the City in June 2014 before [Petitioner] pled guilty and a civil complaint afterward. [Grigg's] claim notice stated in part, "Whether it was Officer [Sefranka] or [Petitioner] who shot [Grigg]," the City's gross negligence caused [Grigg's] injuries. During the civil suit's discovery, [Grigg] objected to a request for admission that [Petitioner] shot him, stating this was information he was "unaware of." [Grigg] also said during discovery that he did not know who shot him and could not admit that it was [Petitioner].

(Doc. 16-6 at 26-27)[3] During superior court proceedings through sentencing, Petitioner was represented by counsel Ronald DeBrigida, Jr. ("trial counsel"). (Doc. 16-1 at 13, 19, 65)

On November 25, 2014, the superior court held a change of plea hearing during which the superior court judge reviewed the charges against Petitioner, the possible sentencing range and availability of probation, special conditions of sentencing and probation, and Petitioner's constitutional rights and rights of review, including that Petitioner was giving up his right against self-incrimination, his right to have a jury determine his innocence or guilt, his right to confront and cross-examine witnesses, and his right to present other evidence on his behalf. (*Id.* at 13-16, 18-63) The superior court judge told Petitioner that the lowest sentence he could receive would be "15 and three quarters" and the highest would "be somewhere" higher than 200 years. (*Id.* at 36-37) The superior court stated that Petitioner may receive a sentence whereby Petitioner never would get out of prison. (*Id.* at 37) Petitioner affirmed his understanding of the sentencing possibilities. (*Id.*) During the change of plea hearing, Petitioner stated that the factual basis for each charge against Petitioner placed on the record by trial counsel and by the prosecutor was true, stated that no one had threatened or forced him to plead guilty, and stated that all of his questions had been answered. (*Id.* at 47-57) The superior court found that Petitioner knowingly, voluntarily, and intelligently pleaded guilty. (*Id.* at 59) On February 27, 2015, the superior court sentenced Petitioner as to all thirteen charges against

---

[3] The appellate court's stated facts are entitled to the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765, 769 (1995) (per curiam) ("In habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct."); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that the statement of facts in an Arizona Supreme Court opinion should not be afforded the presumption of correctness).

Petitioner. (*Id*. at 65-71)

**B. First Post-Conviction Relief ("PCR") Proceedings**

On March 30, 2015,[4] Petitioner filed a *pro se* PCR notice in the superior court ("first PCR notice") and requested appointment of counsel. (Doc. 16-1 at 73-75) On July 14, 2015, Petitioner's PCR counsel Kyle Green ("first PCR counsel") filed a notice of completion of review, in which first PCR counsel asserted that he found no claims to raise for relief and requested an extension of time for Petitioner to file a *pro se* PCR petition. (*Id*. at 77-84)

On August 12, 2015,[5] Petitioner filed a *pro se* PCR petition in the superior court ("first PCR petition"). (*Id*. at 86-94) In his first PCR petition, Petitioner argued that his right against self-incrimination was violated; that he received ineffective assistance of counsel due to trial counsel failing to move to suppress Petitioner's confession, prepare a defense, hire an investigator, or interview witnesses; that Petitioner was improperly pressured into pleading guilty; that the lineup conducted in his case was suggestive; and that Petitioner's car was unconstitutionally searched without a warrant. (*Id*.) In the *pro se* PCR petition, Petitioner wrote that trial counsel did not tell Petitioner "about evidence of 'video footage' that supposedly show the crime & shooting in progress." (*Id*. at 90) The state filed a response in opposition to Petitioner's *pro se* PCR petition. (*Id*. at 96-109)

On January 15, 2016,[6] the superior court dismissed Petitioner's first PCR petition and found that Petitioner was not entitled to relief "[f]or the reasons set forth in the State's Response[.]" (*Id*. at 111) The record does not reflect that Petitioner filed a motion for

---

[4] The prison mailbox rule applied to Petitioner's PCR notice. *Melville*, 68 F.4th at 1159 ("We assume that [Melville] 'turned his petition over to prison authorities on the same day he signed it and apply the mailbox rule.' *Butler v. Long*, 752 F.3d 1177, 1178 n.1 (9th Cir. 2014) (per curiam)."). Petitioner's PCR notice was signed and notarized on March 30, 2015. (Doc. 16-1 at 75) Respondents use the date the PCR notice was filed by the clerk of court, April 20, 2015. (Doc. 16 at 3)

[5] *See* footnote 5, *supra*.

[6] The filing date is the operative date of the superior court's ruling. *See* Ariz. R. Crim. P. 1.10(c) (*see* former Ariz. R. Crim. P. 1.3(c)).

reconsideration or a petition for review in the court of appeals.[7]

## C. Second PCR Proceedings

Over four years later, in June 2020, Petitioner filed a *pro se* "Motion to Correct Error Arising From Oversight Or Omission" in the superior court. (*Id*. at 113-15) Petitioner requested that the superior court "issue an order correcting errors that occurred during the Guilty Plea and sentencing proceedings" and asserted that his trial counsel and first PCR counsel had not provided Petitioner with a copy of his case file. (*Id*. at 113)

On July 23, 2020, the superior court construed Petitioner's June 3, 2020, filing as a second Rule 33 proceeding. (*Id*. at 117-19) The superior court dismissed Petitioner's second Rule 33 proceeding as untimely by more than four years. (*Id*.) The superior court stated that a second Rule 33 proceeding challenging the effectiveness of PCR counsel must be filed within 30 days of the final order in a first PCR proceeding. (*Id*. at 118) Accordingly, Petitioner's second Rule 33 proceeding challenging the effectiveness of PCR counsel was due by February 16, 2016. (*Id*.) Further, the superior court determined that Petitioner "waived all non-jurisdictional defects unrelated to the voluntariness of his plea" and that insofar as Petitioner was "raising new Rule 33.1(a) claims available in the first Rule 33 proceeding, relief is still precluded." (*Id*.) In sum, the superior court found that Petitioner "failed to state a claim for which relief can be granted in an untimely Rule 33 proceeding" because Petitioner failed to "assert substantive claims and adequately explain the reasons for their untimely assertion." (*Id*.)

## D. Third PCR Proceedings

On June 8, 2021, through counsel Clay Hernandez and Carol Lamoureux ("third PCR counsel") Petitioner filed a third PCR notice in the superior court ("third PCR notice"). (*Id*. at 121-26) The third PCR notice checked boxes that Petitioner was raising claims under Ariz. R. Crim. P. 33.1(e), that newly discovered material facts probably exist and those facts probably would have changed the judgment, and Ariz. R. Crim. P. 33.1(g),

---

[7] Further, the Maricopa County Superior Court electronic docket system for case number CR2014-100040-002 does not reflect a motion for reconsideration or a petition for review: *see* https://perma.cc/B99M-VSYU (last accessed May 16, 2024).

that there was a significant change in the law that, if applicable to Petitioner's case, would probably overturn Petitioner's judgment or sentence. (*Id*. at 124-25)

On July 7, 2021, the superior court dismissed proceedings on Petitioner's third PCR notice, finding that the third PCR notice had failed to state a claim for which relief could be granted and failed to "assert substantive claims and adequately explain the reasons for their untimely assertion." (Doc. 16-2 at 3-5) In doing so, the superior court stated:

### A. Rule 33.1(e) Claim

In his current submission, [Petitioner] contends that there are newly discovered and material facts which could change the outcome and entitle him to relief under Ariz. R. Crim. P. 33.1(c). (Notice at 5) Rule 33.1(e) claims "are not subject to preclusion under Rule 33.2(a)(3)." Ariz. R. Crim. P. 33.2(b)(1). Nevertheless, the Court may summarily dismiss if [Petitioner] fails to "provide sufficient reasons why the defendant did not raise the claim in a previous notice or petition, or in a timely manner." *Id*. To be entitled to Rule 33.1(e) relief, [Petitioner] must show that the facts were discovered after trial although existed before trial; the facts could not have been discovered and produced at trial or on appeal through reasonable diligence; the facts are neither solely cumulative nor impeaching; the facts are material; and the facts probably would have changed the verdict or sentence. *State v. Saenz*, 197 Ariz. 487, 489, ¶ 7, 4 P.3d 1030, 1032 (App. 2000), *see also* Ariz. R. Crim. P. 33.1(e). [Petitioner] provides no newly discovered material facts and fails to supply information to support the other Rule 33.1(e) findings. Instead, [Petitioner] states that he "has raised each claim within a reasonable time after learning of the claim." (Notice at 5) Conclusory statements do not support a Rule 33 claim.

### B. Rule 33.1(h)[8] Claim

In addition, [Petitioner] contends that he is innocent pursuant to Ariz. R. Crim. P. 33.1(h). (Notice at 5) Rule 33.1(h) claims "are not subject to preclusion under Rule 33.2(a)(3)." Ariz. R. Crim. P. 33.2(b)(1). Nevertheless, the Court may summarily dismiss if [Petitioner] fails to "provide sufficient reasons why the defendant did not raise the claim in a previous notice or petition, or in a timely manner." *Id*. The rule requires, in relevant part, that [Petitioner] demonstrate "by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would find the defendant guilty of the offense beyond a reasonable doubt." Ariz. R. Crim. P. 33.1(h). He fails to allege facts that would meet the Rule 33.1(h) standard. Moreover, as previously explained, conclusory statements about timeliness do not support Rule 33 relief.

(Doc. 16-2 at 3-4)

On July 14, 2021, through third PCR counsel, Petitioner filed a motion for rehearing, arguing that the superior court erred in dismissing proceedings on Petitioner's third PCR

---

[8] The third PCR notice cited Ariz. R. Crim. P. 33.1(g), not 33.1(h). (Doc. 16-1 at 125)

notice without allowing Petitioner to amend his notice or explain why his claims could not be raised in an earlier PCR proceeding. (*Id*. at 7-44) Petitioner asserted that he did not raise a claim of newly discovered evidence under Ariz. R. Crim. P. 33.1(e) in a previous PCR proceeding because he had only recently discovered the civil lawsuit filed by victim Grigg. (*Id*. at 13-14) Accordingly, Petitioner asserted that his claim of newly discovered evidence was neither precluded nor untimely. (*Id*.) The state filed a response in opposition (*Id*. at 46-56), and Petitioner filed a reply (*Id*. at 58-62).

On November 12, 2021, the superior court "note[d] that [Petitioner's] Reply concedes that he has abandoned his Rule 33.1(g) claim," but found that "the Court's summary dismissal of [Petitioner's] Rule 33.1(e) claim without giving him an opportunity to amend it or provide further explanation was inappropriate under the circumstances." (*Id*. at 64) The superior court reinstated Petitioner's third PCR notice as to Petitioner's Ariz. R. Crim. P. 33.1(e) claim only and directed Petitioner to file an amended PCR notice "setting forth the factual basis of his request, and specific reasons why his claim could not be raised in a previous Notice or Petition." (*Id*.)

### E.  Fourth PCR Proceedings

On December 3, 2021, through third PCR counsel, Petitioner filed an amended PCR notice ("fourth PCR notice") in the superior court. (*Id*. at 66-81) In his fourth PCR notice, Petitioner asserted that he was raising a claim of newly discovered evidence under Ariz. R. Crim. P. 33.1(e), specifically regarding a civil lawsuit filed by victim Grigg against the City of Phoenix and the Phoenix Public Department. (*Id*. at 69-72) The fourth PCR notice asserted that Petitioner learned of victim Grigg's lawsuit in 2020 and asserted that victim Grigg had stated during the civil lawsuit proceedings that victim Grigg did not know who had shot him. (*Id*.) The fourth PCR notice maintained that victim Grigg's statements in the civil lawsuit were inconsistent with victim Grigg's representations during the criminal prosecution of Petitioner in case number CR2014-100040-002; the fourth PCR notice claimed that victim Grigg had not admitted in Petitioner's prosecution, case number CR2014-100040-002, that victim Grigg did not know who had shot him. (*Id*. at 71)

On May 13, 2022, through third PCR counsel, Petitioner filed a PCR petition in the superior court. (Doc. 16-3 at 3-159; Doc. 16-4 at 2-112) The PCR petition argued that the civil lawsuit and victim Grigg's statements in the lawsuit were newly discovered evidence that would have changed Petitioner's decision to plead guilty, the superior court's acceptance of Petitioner's guilty plea, and/or the superior court's sentencing, and that Petitioner was entitled to an evidentiary hearing. (Doc. 16-3 at 13-29) The PCR petition further argued that either victim Grigg or the state had withheld material evidence regarding victim Grigg's lack of knowledge of who shot him. (*Id*. at 15-17, 20-24) Consequently, the PCR petition asserted that Petitioner's guilty plea was neither knowing nor voluntary. (*Id*. at 24-28)

The state filed a response in opposition. (Doc. 16-5 at 3-76) The response included an October 10, 2014, letter to Petitioner's trial counsel enclosing audio interviews of several witnesses including victim Grigg as well as an affidavit by the trial prosecutor in Petitioner's prosecution, case number CR2014-100040-002. (*Id.* at 26-27, 29-31) The affidavit by the trial prosecutor stated that in August 2014 a report of the police interview of victim Grigg was disclosed to Petitioner's trial counsel and that an audio recording of an interview of victim Grigg was disclosed to Petitioner's trial counsel on October 10, 2014. (*Id.* at 30) The trial prosecutor summed up that the report and interview revealed that victim "Grigg had very little memory of his encounter with Defendant" and that victim "Grigg's inability to recall the events of the case" was known by the attorneys well before the change of plea hearing. (*Id.*)

Petitioner filed a reply through third PCR counsel. (*Id*. at 78-128)

On February 10, 2023, the superior court held oral argument as to whether to hold an evidentiary hearing on Petitioner's PCR petition. (*Id*. at 130-31) On March 22, 2023, the superior court found that Petitioner had "not identified newly discovered material facts that would entitle him to an evidentiary hearing or otherwise constitute a basis to permit him to withdraw from his guilty plea." (*Id*. at 133-35) The superior court determined that Petitioner had not established a colorable claim entitling him to an evidentiary hearing or

post-conviction relief, stating:

> The essence of [Petitioner's] Rule 33 claim is that at the time of the plea, [Petitioner] was not aware that Grigg did not know who shot him and that Grigg could not state that it was [Petitioner]. During oral argument, the Court specifically confirmed with [Petitioner's] counsel that the "newly discovered evidence" was not Grigg's lack of knowledge regarding the shooting, but Grigg's affirmative expression of doubt whether [Petitioner] was the shooter, and Grigg's claim that it may have been Sefranka, not [Petitioner], who shot Grigg.
>
> Rule 33.1(e) Ariz. R. Crim. P. requires that in order to state a colorable claim, a Defendant must establish that "newly discovered material facts" probably exist and those facts would have probably changed the judgment or sentence. Newly discovered material facts exist if:
>
> 1.   The facts were discovered after sentencing;
>
> 2.   The defendant exercised due diligence in discovering those facts; and
>
> 3.   The newly discovered facts are material and not merely cumulative or used solely for impeachment unless the impeachment evidence substantially undermines testimony that was of such critical significance that the impeachment evidence probably would have changed the judgment or sentence.
>
> Rule 33.1(e)(1-3). The Court need not address the first two requirements above, because even if Grigg's position regarding who shot him was "discovered" after sentencing and [Petitioner] exercised due diligence in discovering it, Grigg's subsequent "statements" in his civil lawsuit against the City of Phoenix were simply not "material."
>
> Evidence is "material" if it is "relevant and goes to substantial matters in dispute or has a legitimate and effective influence or bearing on the decision of the case." *State v. Orantez*, 183 Ariz. 218, 221-22 (1985). The materiality of any information subsequently discovered by [Petitioner] must be viewed in light of what [Petitioner] already knew at the time of the plea – that Grigg consistently expressed that he did not remember the sequence of events. Although [Petitioner] now claims that Grigg "never expressed any doubts about [Petitioner's] specific role in the shooting or suggested that he did not know who shot him" (*see* Petition at page 6), Grigg always made it clear "that he could not remember any of the significant details." *See* Butcher report, DR2013 02311038 A 261, attached as Exhibit A to the State's Response. If Grigg couldn't remember what happened, by definition he did not know who shot him. Thus, Grigg's inability to identify the shooter was nothing new, and the Court finds that any statements or "facts" suggesting that Grigg did not know who shot him are not "material" for Rule 33 purposes.
>
> In [Petitioner's] Petition, Reply and at oral argument, [Petitioner] identified only two instances in which Grigg allegedly expressed doubt that [Petitioner] was the shooter or otherwise claimed it may have been Sefranka, not [Petitioner], who shot him. First, in Grigg's June 25, 2014 Notice of Claim letter at page 10, his attorney wrote: "Whether it was Officer Sefranka or [Petitioner] who shot Mr. Grigg with the City of Phoenix's bullet, the grossly negligent behavior and actions of the City of Phoenix by and through its

> Police Department directly and proximately caused the severe and catastrophic injuries to Phillip…." This was hardly an assertion that someone other than [Petitioner] shot Grigg. In fact, it is consistent with Grigg's position from the start that he had no memory of the specifics of the incident or how he got shot. The statement provided no factual support, from Grigg or anyone else, that anyone other than [Petitioner] shot Grigg. Further, the same Notice of Claim letter one page earlier affirmatively adopted the statement that "Roger Sharp was able to disarm Officer Sefranka and then shoot both Phillip Grigg and Officer Sefranka rendering them incapacitated."
>
> The second "material fact" that [Petitioner] argues would have changed his decision to plead had he known about it was Grigg's response to a request for admission in Grigg's civil lawsuit. Specifically, on September 28, 2015, Grigg's attorney responded to a request for admission that asked: "Admit that [Petitioner] shot YOU on December 31, 2013." (emphasis in original). The response began: "Objection – premature. This Request asks for information that Plaintiffs are unaware of." The response then goes on to claim that the City controlled the information necessary to respond and that Officer Sefranka and the City were otherwise negligent. Grigg then formally denied the request to admit that [Petitioner] shot him. The Court finds this is cannot fairly be characterized as a claim that someone other than [Petitioner] shot Grigg. Grigg always claimed he didn't remember or otherwise know who shot him. His attorney's attempt to avoid being pinned down regarding who fired the shot that hit Grigg – again void of any factual basis – does not constitute a "fact" that reasonably could have altered [Petitioner's] decision to plead.
>
> At the time of the plea, it was clear that Phillip Grigg could not say who shot him. Statements in the Notice of Claim letter and responses to discovery that refused to concede it was [Petitioner], without offering any facts to support that the shooter was anyone other than [Petitioner], do not rise to the level of newly discovered material facts that would entitle [Petitioner] to withdraw from his plea. Further, there is no need for an evidentiary hearing to "flesh out" any further information.

(Doc. 16-5 at 133-35)

On April 21, 2023, Petitioner filed a *pro se* petition for review in the Arizona Court of Appeals. (*Id.* at 137-53) In his petition for review, Petitioner asserted that the state intentionally suppressed exculpatory evidence in violation of *Brady*[9], that Petitioner was unable to cross-examine Officer Sefranka about victim Grigg's civil lawsuit in violation of the Sixth Amendment Confrontation Clause, and that Petitioner did not willingly and knowingly plead guilty due to the state suppressing material and exculpatory evidence. (*Id.* at 138-48)

The state filed a response (*Id.* at 155-62), and Petitioner filed a reply (Doc. 16-6 at 3-24).

---

[9] *Brady v. Maryland*, 373 U.S. 83 (1963).

On October 19, 2023, the Arizona Court of Appeals granted review of Petitioner's petition for review in his fourth PCR proceedings but denied relief. (*Id*. at 26-28) In doing so, the court of appeals stated:

> [Petitioner] argues the court erred by denying him an evidentiary hearing. [Petitioner] seeks to question Officer [Sefranka] about his knowledge of the civil suit and "asses[s] his credibility." Before the superior court, [Petitioner] theorized the civil suit "hindered the State's willingness to engage in meaningful plea negotiations because allowing [Petitioner] to plead guilty to anything other than an intentional, premedi[t]ated homicide would have exposed the City … to greater civil liability for [Grigg's] injuries." [Petitioner] also suggested the State "deliberately concealed" [Grigg's] lawsuit. Here, [Petitioner] asserts the City and the State conspired to cover up police misconduct by tricking [Petitioner] into pleading guilty. And [Petitioner] argues that, had he known about the civil suit, he could have cross-examined Officer [Sefranka] about his knowledge and role in the conspiracy.
>
> Impeachment evidence is insufficient for a colorable Rule 33.1(e) claim unless the evidence undermines testimony so significant that it probably would have changed the judgment or sentence. *See* Ariz. R. Crim. P. 33.1(e)(3). [Petitioner] did not offer facts suggesting that the State declined to offer a plea to shield the City from liability. Nor did he offer facts suggesting the State intentionally suppressed knowledge of the civil suit. And the State presented evidence of its policy not to offer plea deals without Division Chief approval in cases involving a firearm discharged at an officer. [Petitioner] failed to allege facts which, if true, would show that Officer [Sefranka's] knowledge of the civil suit probably would have changed [Petitioner's] verdict or sentence. *See Amaral*, 239 Ariz. at 220, ¶ 11.
>
> [Petitioner] also disputes the superior court's finding that [Grigg's] inability to identify the shooter was not material. The superior court found that [Petitioner] knew [Grigg] did not remember what happened during the shooting. [Petitioner] did not dispute the State's disclosure. And as the superior court explained, "[i]f [Grigg] couldn't remember what happened, by definition he did not know who shot him." [Grigg's] statements during the civil suit highlighting his inability to identify the shooter are not newly discovered material facts. *See* Ariz. R. Crim. P. 33.1(e). Thus, the superior court did not err by denying [Petitioner's] request for an evidentiary hearing and dismissing the PCR petition.
>
> Finally, [Petitioner] argues the State and the superior court committed fraud and misconduct by intentionally suppressing knowledge of the civil suit. [Petitioner] seeks habeas corpus relief and asserts the State violated his due process rights. Because these claims are outside the scope of Rule 33.1(e), we decline to address them.

(Doc. 16-6 at 27-28)

Petitioner did not file a petition for review to the Arizona Supreme Court. (*Id*. at 30) On November 27, 2023, the court of appeals issued its mandate. (*Id*. at 30-32)

**F.  Fifth PCR Proceedings**

- 12 -

On April 5, 2023, Petitioner filed a fifth PCR notice in the superior court ("fifth PCR notice"). (*Id*. at 40-43) On April 12, 2023, Petitioner filed a *pro se* PCR petition in the superior court. (*Id*. at 45-76) In his *pro se* PCR petition, Petitioner argued that the superior court erred in sentencing Petitioner to consecutive sentences in violation of double jeopardy; that the superior court "committed error in using statutes on different and seperate [*sic*] charges; and that Petitioner's counsel provided ineffective assistance of counsel by failing to object to consecutive sentences and failing to investigate Petitioner's accusers. (*Id*. at 47-48)

On May 25, 2023, the superior court dismissed Petitioner's fifth PCR proceedings, finding that Petitioner had not stated a claim for which relief could be granted and had failed to assert substantive claims and adequately explain the reasons for their assertion. (*Id*. at 78-81) The record does not reflect that Petitioner filed a motion for reconsideration or a petition for review in the court of appeals.[10]

## II.    PETITIONER'S HABEAS CLAIMS

In his August 2, 2023, Amended Petition, Petitioner raises two grounds for relief. (Doc. 8)

In Amended Petition Ground One, Petitioner asserts there is "newly discovered evidence" and that his plea was involuntary because he did not know that the "state had withheld exculpatory evidence[.]" (*Id*. at 4) This Court construed Petitioner's Ground One claim as an assertion that Petitioner's Fifth and Sixth Amendment rights were violated. (Doc. 9 at 2) To the Amended Petition, Petitioner attached his April 3, 2023, Petition, in which Petitioner argues that the state knowingly withheld material evidence, "forcing [Petitioner] to unwillingly and unknowingly plead guilty to a crime another has pled guilty to" in violation of Petitioner's Fifth Amendment right against self-incrimination. (Doc. 8 at 40) Petitioner further argues that he was unable to cross-examine Officer Sefranka about the civil lawsuit and the alleged exculpatory evidence, in violation of the Sixth Amendment

---

[10] Further, the Maricopa County Superior Court electronic docket system for case number CR2014-100040-002 does not reflect a motion for reconsideration or a petition for review: *see* https://perma.cc/B99M-VSYU (last accessed May 16, 2024).

Confrontation Clause. (*Id*. at 36-40)

In Amended Petition Ground Two, Petitioner asserts a "Non disclousure [*sic*] of documents" and that the state "knowingly suppressed exculpatory evidence in order to gain wrongful conviction[.]" (Doc. 8 at 7) This Court construed Petitioner's Ground Two claim as a Fourteenth Amendment claim under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). (Doc. 9 at 2) In his Petition attached to the Amended Petition, Petitioner argues that the state withheld exculpatory evidence in violation of *Brady*, namely that victim Grigg initiated a civil lawsuit against the City of Phoenix and the Phoenix Police Department. (Doc. 8 at 31-35) Petitioner asserts that at the time of sentencing, the state knew of the civil lawsuit and intentionally suppressed evidence regarding the lawsuit. (*Id*.) Further, Petitioner asserts that victim Grigg stated in the civil lawsuit that victim Grigg did not know whether Petitioner or Officer Sefranka shot him, and Petitioner claims this was "a material fact that completely alters" Petitioner's case. (*Id*. at 31)

In their Answer, Respondents concede that the Amended Petition is timely and that the Amended Petition claims were properly exhausted in state court. (Doc. 16 at 10, 17-18) Respondents argue that the Amended Petition claims are non-cognizable because the Amended Petition claims are "too vague and conclusory to state any cause for habeas relief." (*Id*. at 11) Respondents further assert that the Amended Petition claims fail on the merits. (*Id*. at 18-24) Respondents request that a certificate of appealability be denied. (*Id*. at 24-25)

In his reply, Petitioner reasserts that the state suppressed evidence in violation of *Brady*, preventing Petitioner from presenting a complete defense and causing Petitioner to plead guilty. (Doc. 17 at 1-3) Petitioner asserts that evidence of the civil lawsuit was material under Ariz. R. Crim. P. 33.1(e) and that the Phoenix Police Department had awareness of the civil lawsuit before Petitioner's sentence, even if the individual prosecutor in Maricopa County Superior Court case number CR2014-100040 did not. (*Id*. at 3-4) Because of the civil lawsuit, Petitioner also argues that victim Grigg and the state had a financial interest in the outcome of Petitioner's criminal case, that he could have impeached

the state's witnesses with evidence of a financial interest, and that such impeachment evidence was material because "it would have weakened the state's case against [Petitioner], and would have altered his decision to plead guilty to the indictment." (*Id.* at 4-5)

### III.   NON-COGNIZABILITY

In their Answer to the Amended Petition, Respondents assert that the Amended Petition's claims are non-cognizable because they are too vague and conclusory for federal habeas relief. (Doc. 16 at 11) Respondents assert that "[w]hile this Court identifies constitutional claims, [Petitioner] neither argues a violation of federal law in connection with his claims nor does he develop his claims in any meaningful extent to permit Respondents to respond to them in an adequate and appropriate manner." (*Id.*) Respondents argue that Rule 2(c) of the Rules Governing § 2254 Cases requires Petitioner to "specify all the grounds for relief available" and "state the facts supporting each ground." (*Id.*)

#### A. Ground One

In Ground One of the Amended Petition, Petitioner asserts there is "Newly discovered evidence" and that he "[i]nvoluntarily entered plea not knowing state had withheld exculpatory evidence[.]" (Doc. 8 at 4) In its November 3, 2023, Service Order, this Court construed Petitioner's Ground One claim "as asserting a violation of his Fifth and Sixth Amendment rights. *See Boykin v. Alabama*, 395 U.S. 238, 241, 243 (1969) (pleading guilty implicates the Fifth Amendment privilege against self-incrimination, the Sixth Amendment right to confront one's accusers, and the Sixth Amendment right to trial by jury and must be knowing, voluntary, and intelligent)." (Doc. 9 at 2)

To the Amended Petition, Petitioner attached his April 3, 2023, Petition, in which Petitioner argues that the state knowingly withheld material evidence, "forcing [Petitioner] to unwillingly and unknowingly plead guilty to a crime another has pled guilty to" in violation of Petitioner's Fifth Amendment right against self-incrimination. (Doc. 8 at 40) Petitioner further argues that he was unable to cross-examine Officer Sefranka about the civil lawsuit and the alleged exculpatory evidence, in violation of the Sixth Amendment

Confrontation Clause. (*Id*. at 36-40) Respondents do not address Petitioner's Ground One arguments as expanded upon in the Petition attached to the Amended Petition.

The Ninth Circuit has found that a supporting brief attached to a petition may be considered as part of the habeas petition under Fed. R. Civ. P. 10(c). *Ross v. Williams*, 950 F.3d 1160, 1168-69 (9th Cir. 2020). In *Ross*, the Ninth Circuit determined that a habeas petition may incorporate attached exhibits, even if a petitioner does not reference the attachment in the petition itself. *Id*. (citing *Dye v. Hofbauer*, 546 U.S. 1, 4 (2005)). Fed. R. Civ. P. 10(c) states that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." The Ninth Circuit has determined that "a legal brief counts as a written instrument within the meaning of Rule 10(c)." *Ross*, 950 F.3d at 1169 (citing *Dye*, 546 U.S. at 4); *see also id*. at 1169, n.7.[11]

As stated above, this Court previously construed Petitioner's Ground One claim to assert a violation of Petitioner's Fifth and Sixth Amendment rights, as Petitioner asserted in his April 3, 2023, Petition attached to the Amended Petition. (Doc. 9 at 2) Because this Court may properly consider Petitioner's attached exhibits as part of the Amended Petition, Petitioner has sufficiently stated cognizable constitutional violations for federal habeas relief in Ground One.

### B. Ground Two

In Ground Two of the Amended Petition, Petitioner asserts "Non disclousure [*sic*] of documents" and that the "state knowingly suppressed exculpatory evidence in order to gain wrongful conviction[.]" (Doc. 8 at 7) In its November 3, 2023, Service Order, this Court construed Petitioner's Ground Two claim "as asserting a Fourteenth Amendment claim under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ('We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution')." (Doc. 9 at 2)

---

[11] Further, the Advisory Committee Note to Rule 4 of the Rules Governing Section 2254 Cases recognizes that a court's preliminary review of a petition prior to respondents' response "may properly encompass any exhibits attached to the petition, including, but not limited to, transcripts, sentencing records, and copies of state court opinions."

To the Amended Petition, Petitioner attached his April 3, 2023, Petition, in which Petitioner argues that the state withheld exculpatory evidence in violation of *Brady*, namely that victim Grigg initiated a civil lawsuit against the City of Phoenix and the Phoenix Police Department. (Doc. 8 at 31-35) Petitioner asserts that at the time of sentencing, the state knew of the civil lawsuit and intentionally suppressed evidence regarding the lawsuit. (*Id.*) Further, Petitioner asserts that victim Grigg stated in the civil lawsuit that victim Grigg did not know whether Petitioner or Officer Sefranka shot him, which was "a material fact that completely alters" Petitioner's case. (*Id.* at 31) Respondents do not address Petitioner's Ground Two arguments as expanded upon in the Petition attached to the Amended Petition.

As discussed *supra*, this Court may consider attachments to the Amended Petition as part of the Amended Petition. *Ross*, 950 F.3d at 1168-69. This Court previously construed Petitioner's Ground Two claim to assert a Fourteenth Amendment claim pursuant to *Brady*, as Petitioner asserts in his April 3, 2023, Petition attached to the Amended Petition. Because this Court may consider Petitioner's attached exhibits as part of the Amended Petition, Petitioner has sufficiently stated a cognizable constitutional violation for federal habeas relief in Ground Two. *Ross*, 950 F.3d at 1169.

## IV.  MERITS

While Respondents concede that Petitioner has exhausted Grounds One and Two of the Amended Petition, Respondents assert that Grounds One and Two of the Amended Petition fail on the merits. (Doc. 16 at 17-24)

### A.  28 U.S.C. § 2254 – Legal Standard of Review

On habeas review of claims adjudicated on the merits in a state court proceeding, this Court can only grant relief if the petitioner demonstrates that adjudication of the claim either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This is a "'highly deferential standard for evaluating state-court rulings' which

demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). A federal court "look[s] to the last reasoned state court decision" to make a determination on a claim pursuant to Section 2254(d). *White v. Ryan*, 895 F.3d 641, 665 (9th Cir. 2018) (citing *Wilson v. Sellers*, 584 U.S. 122, 125-126 (2018)).

Under the "unreasonable application" prong of Section 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). For a federal court to find a state court's application of Supreme Court precedent "unreasonable" under Section 2254(d)(1), the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409.

To make a determination pursuant to Section 2254(d)(1), the Court first identifies the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the United States Supreme Court which existed at the time the petitioner's state court conviction became final. *Id.* at 412. The Supreme Court has emphasized that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101. Accordingly, to obtain habeas relief from this Court, Petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Regarding Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). As the Ninth Circuit has explained, to find that a factual determination is unreasonable under Section 2254(d)(2), the court must be "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *abrogated on other grounds by Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014). "This is a daunting standard—one that will be satisfied in relatively few cases." *Id.*

The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." Section 2254(e)(1). The Supreme Court has not defined the precise relationship between Section 2254(d)(2) and Section 2254(e)(1) but has clarified "that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *See Burt v. Titlow*, 571 U.S. 12, 18 (2013) (citing *Wood*, 558 U.S. at 293, 301).

### B. The Amended Petition Claims Fail on the Merits

In Ground One of the Amended Petition, Petitioner asserts that there are "newly discovered facts" and that he involuntarily entered a guilty plea without knowing that the state had withheld alleged exculpatory evidence. (Doc. 8 at 4) In his April 3, 2023, Petition, attached to the Amended Petition, Petitioner asserts that at the time of his sentencing he was unaware of the civil lawsuit initiated by victim Grigg. (*Id.* at 36) Petitioner argues that that state knowingly withheld material evidence of the civil lawsuit, "forcing [Petitioner] to unwillingly and unknowingly plead guilty to a crime another has pled guilty to" in violation of Petitioner's Fifth Amendment right against self-incrimination. (*Id.* at 38, 40) Petitioner further asserts that if evidence of the civil lawsuit was disclosed prior to

sentencing, his trial counsel "would have cross-examined Officer Sefranka in an entirely different way" and that Petitioner would have questioned Officer Sefranka about his knowledge of the civil suit prior to Petitioner's sentencing. (*Id*. at 36-38) Because Petitioner was not able to cross-examine Officer Sefranka regarding the civil lawsuit, Petitioner asserts that his rights were violated under the Sixth Amendment Confrontation Clause. (*Id*. at 36-40)

In Ground Two of the Amended Petition, Petitioner asserts that the state knowingly suppressed exculpatory evidence to obtain a wrongful conviction. (Doc. 8 at 7) In his April 3, 2023, Petition, attached to the Amended Petition, Petitioner argues that the state withheld exculpatory evidence in violation of *Brady*, namely that victim Grigg initiated a civil lawsuit against the City of Phoenix and the Phoenix Police Department. (*Id*. at 31-35) Petitioner asserts that at the time of sentencing, the state knew of the civil lawsuit and intentionally suppressed evidence regarding the lawsuit. (*Id*.) Further, Petitioner asserts that victim Grigg stated in the civil lawsuit that victim Grigg did not know whether Petitioner or Officer Sefranka shot him, which was "a material fact that completely alters" Petitioner's case. (*Id*. at 31)

In their Answer, Respondents argue that Petitioner's Grounds One and Two claims are meritless because Petitioner knew about victim Grigg's inability to remember details before entering a guilty plea, the state disclosed victim Grigg's police interview in which victim Grigg could not remember details of the shooting, and victim Grigg's inability to remember details is not material evidence. (Doc. 16 at 22-24) Respondents assert that Petitioner "fails to explain or establish that the evidence was newly discovered, withheld by the government, or material." (Doc. 16 at 24)

In his reply in support of the Amended Petition, Petitioner reasserts that the state suppressed evidence in violation of *Brady*, preventing Petitioner from presenting a complete defense and causing Petitioner to plead guilty. (Doc. 17 at 1-3) Petitioner asserts that evidence of victim Grigg's civil lawsuit was material under Ariz. R. Crim. P. 33.1(e) and that the Phoenix Police Department had awareness of the civil lawsuit before

Petitioner's sentence, even if the individual prosecutor did not. (*Id*. at 3-4) Because of the civil lawsuit, Petitioner also argues that victim Grigg and the state had a financial interest in the outcome of Petitioner's criminal case, that he could have impeached the state's witnesses with evidence of a financial interest, and that such impeachment evidence was material because "it would have weakened the state's case against [Petitioner], and would have altered his decision to plead guilty to the indictment." (*Id*. at 4-5)

In providing the last reasoned decision on Petitioner's Grounds One and Two claims during Petitioner's fourth PCR proceedings, the Arizona Court of Appeals stated:

> [Petitioner] argues the court erred by denying him an evidentiary hearing. [Petitioner] seeks to question Officer [Sefranka] about his knowledge of the civil suit and "asses[s] his credibility." Before the superior court, [Petitioner] theorized the civil suit "hindered the State's willingness to engage in meaningful plea negotiations because allowing [Petitioner] to plead guilty to anything other than an intentional, premedi[t]ated homicide would have exposed the City … to greater civil liability for [Grigg's] injuries." [Petitioner] also suggested the State "deliberately concealed" [Grigg's] lawsuit. Here, [Petitioner] asserts the City and the State conspired to cover up police misconduct by tricking [Petitioner] into pleading guilty. And [Petitioner] argues that, had he known about the civil suit, he could have cross-examined Officer [Sefranka] about his knowledge and role in the conspiracy.

> Impeachment evidence is insufficient for a colorable Rule 33.1(e) claim unless the evidence undermines testimony so significant that it probably would have changed the judgment or sentence. *See* Ariz. R. Crim. P. 33.1(e)(3). [Petitioner] did not offer facts suggesting that the State declined to offer a plea to shield the City from liability. Nor did he offer facts suggesting the State intentionally suppressed knowledge of the civil suit. And the State presented evidence of its policy not to offer plea deals without Division Chief approval in cases involving a firearm discharged at an officer. [Petitioner] failed to allege facts which, if true, would show that Officer [Sefranka's] knowledge of the civil suit probably would have changed [Petitioner's] verdict or sentence. *See Amaral*, 239 Ariz. at 220, ¶ 11.

> [Petitioner] also disputes the superior court's finding that [Grigg's] inability to identify the shooter was not material. The superior court found that [Petitioner] knew [Grigg] did not remember what happened during the shooting. [Petitioner] did not dispute the State's disclosure. And as the superior court explained, "[i]f [Grigg] couldn't remember what happened, by definition he did not know who shot him." [Grigg's] statements during the civil suit highlighting his inability to identify the shooter are not newly discovered material facts. *See* Ariz. R. Crim. P. 33.1(e). Thus, the superior court did not err by denying [Petitioner's] request for an evidentiary hearing and dismissing the PCR petition.

(Doc. 16-6 at 27-28)

To prevail on his Grounds One and Two claims, Petitioner must show that the court

of appeals' decision was based on an unreasonable determination of the facts or was contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254. Petitioner has not and cannot do so.

In August and October 2014 - prior to Petitioner's November 2014 change of plea and February 2015 sentencing proceedings - the state disclosed victim Grigg's police interview, in which Grigg stated that he could not remember what happened during the events leading to the charges against Petitioner. (*See* Doc. 16-5 at 20-21; Doc. 16-6 at 26) Petitioner does not dispute in his Amended Petition or reply that the prosecution disclosed victim Grigg's police interview to Petitioner's trial counsel prior to Petitioner's November 2014 change of plea colloquy. Consistent with the police interview, in victim Grigg's June 2014 notice of claim prior to filing his civil lawsuit, victim Grigg stated "[w]hether it was Officer Sefranka or [Petitioner] who shot Mr. Grigg with the City of Phoenix's bullet, the grossly negligent behavior and actions of the City of Phoenix by and through its Police Department" caused victim Grigg's injuries. (Doc. 16-5 at 97) In December 2014, victim Grigg filed his civil lawsuit against the City of Phoenix and the Phoenix Police Department. (*See* Doc. 16-6 at 26-27) Petitioner expressly acknowledges in his reply in support of the Amended Petition that he was aware of victim Grigg's civil lawsuit at the time of his February 27, 2015, sentencing hearing. (Doc. 17 at 5)

As for Petitioner's Fifth Amendment claim that he involuntarily pleaded guilty in violation of his right against self-incrimination, the United States Supreme Court has determined that a defendant must enter a guilty plea voluntarily and "must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (quoting *Brady v. United States*, 397 U.S. 742, 748). This Court must determine whether a petitioner's plea was "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A plea is not involuntary if it "is induced by the promise of a recommendation of a lenient sentence, and thus by the fear of a greater penalty upon conviction after a trial." *Bordenkircher v.*

*Hayes*, 434 U.S. 357, 363 (1978). A plea may be involuntary if it is induced by threats, misrepresentations, or improper promises. *Mabry v. Johnson*, 467 U.S. 504, 509 (1984).

Despite the state declining to extend a plea offer Petitioner in accordance with a "policy not to offer a plea without Division Chief approval for any case involving a firearm pointed or discharged at an officer in his or her official capacity," (Doc. 16-6 at 26; *see also* Doc. 16-5 at 29-30), Petitioner pleaded guilty to all the charges. During the November 25, 2014, change of plea hearing in the superior court, Petitioner affirmed that he understood the charges against him, the potential sentencing ranges, the rights Petitioner was giving up by pleading guilty, and his rights of review. (Doc. 16-1 at 23-42) At the change of plea hearing, Petitioner agreed to the factual bases placed on the record by counsel, including the factual bases concerning the discharge of Officer Sefranka's weapon:

> MR DEBRIGIDA[12]: Judge, with respect to Count 9, as this struggle continued, during the course of this struggle, [Petitioner] obtained control or somewhat of a control over Officer Sofranka's [*sic*] weapon and at that point discharged a weapon striking Officer Sofranka. That conduct -- [Petitioner] knew or should have known that such conduct could cause the death, having time to consider that, of Officer Sofranka had he -- by essentially obtaining control of and discharging the weapon into Officer Sofranka.
>
> THE COURT: Does the State have anything to add to the factual basis for Count 9? And have victim's rights been complied with?
>
> MR. GODDARD[13]: Victim's rights have been complied with. And I don't have anything to add to Mr. Debrigida's statement.
>
> THE COURT: Mr. Sharp, you heard what your attorney said regarding what happened as to Count 9. Is what he said true?
>
> [PETITIONER]: Yes.
>
> THE COURT: Okay. As to Count 10.
>
> MR. DEBRIGIDA: Judge, as this situation progressed and as Officer Sofranka was attempting to affect the arrest on [Petitioner], a Phillip Grigg, a posse member who witnessed this incident, came to the aide of the officer, also attempted to help place [Petitioner] into custody. He was also wounded by the discharge of the gun that [Petitioner] had gotten ahold of. And he knew that discharging a weapon in this fashion -- knew or should have known that this was likely to cause or could cause the death of the individual, specifically

---

[12] Petitioner's trial counsel. (Doc. 16-1 at 19)

[13] Counsel for the state. (Doc. 16-1 at 19)

- 23 -

Posse Member Grigg, Phillip Grigg.

THE COURT: Does the State have anything to add to the factual basis as to Count 10? And have victim's rights been complied with?

MR. GODDARD: Nothing to add, and victim's right have been complied with.

THE COURT: Mr. Sharp, you heard what your attorney said regarding what happened as to Count 10. Is what he said true?

[PETITIONER]: Yes.

(*Id*. at 53-55) Petitioner pleaded guilty to each charge against him, avowed that no one had threatened or forced him to plead guilty, and confirmed that all of his questions had been answered. (*Id*. at 43-58) The superior court found that Petitioner's guilty plea was knowing, voluntary, and intelligent. (*Id*. at 59) There is no indication in the record that Petitioner's guilty plea was not knowing, voluntary, or intelligent, or that Petitioner's guilty plea was induced by threats, misrepresentations, or improper promises. *Mabry*, 467 U.S. at 509.

As for Petitioner's claim that non-disclosure of victim Grigg's civil lawsuit violated Petitioner's Sixth Amendment right to confront Officer Sefranka about the lawsuit, the Confrontation Clause of the Sixth Amendment includes a right to cross-examine witnesses, such as to demonstrate the bias or reliability of the witness. *Olden v. Kentucky*, 488 U.S. 227, 231 (1988); *Pennsylvania v. Ritchie*, 480 U.S. 39, 51-52 (1987). However, by pleading guilty, Petitioner gave up his right to cross-examine witnesses, including about financial incentives. During the superior court's November 25, 2014, change of plea hearing, Petitioner acknowledged that he understood he was giving up his constitutional rights, encompassing the right to cross-examine witnesses, by pleading guilty. (Doc. 16-1 at 38-39) The superior court specifically stated that by pleading guilty, Petitioner would be "giving up" his "right to confront and cross-examine witnesses that testify against you and the right to have subpoenas issued for" witnesses to testify on Petitioner's behalf" and Petitioner stated that he understood he was giving up such rights. (*Id.* at 39) Further, as discussed *supra*, there is no indication that Petitioner's guilty plea was invalid or not knowing, voluntary, and intelligent. *See Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("A guilty plea operates as a waiver of important rights, and is valid only if done

voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'").

Moreover, Petitioner has not shown, and the record does not support, that a *Brady* violation occurred. To demonstrate a violation of *Brady*, Petitioner must show that "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Non-disclosure of evidence "is prejudicial if that evidence was 'material[,]'" and "[e]vidence is 'material' if it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Comstock v. Humphries*, 786 F.3d 701, 710 (9th Cir. 2015) (citing *Strickler*, 527 U.S. at 290). In other words, Petitioner must show a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Petitioner does not show that victim Grigg's civil lawsuit was exculpatory or impeaching. *Strickler*, 527 U.S. at 281-82. At the time of his November 2014 change of plea colloquy, Petitioner was already aware that victim Grigg did not know what happened during the shooting, including victim Grigg not knowing who shot victim Grigg. In August and October 2014, the state disclosed victim Grigg's police interview in which victim Grigg could not remember what happened during the events leading to the charges against Petitioner. (*See* Doc. 16-5 at 20-21; Doc. 16-6 at 26) As both the superior court and the court of appeals found in Petitioner's fourth PCR proceedings, because victim Grigg did not know what happened during the events leading to charges against Petitioner, victim Grigg inherently did not know who shot him. (Doc. 16-5 at 134; Doc. 16-6 at 28) Further, victim Grigg not knowing who shot him is not the same as victim Grigg stating that someone other than Petitioner shot him. Also, there is no indication that the state willfully or inadvertently failed to disclose evidence of victim Grigg's civil lawsuit. *Strickler*, 527 U.S. at 281-82. Additionally, Petitioner does not show that evidence of victim Grigg's

lawsuit was material such that prejudice occurred, or that the result of Petitioner's case would have been different if he had learned of victim Grigg's civil lawsuit earlier. *Id.* As discussed *supra*, at the time of his change of plea and sentencing proceedings, Petitioner was already aware that victim Grigg did not know what happened or who shot him during the events leading to charges against Petitioner. Petitioner nevertheless proceeded to plead guilty. Because Petitioner does not show that victim Grigg's lawsuit was exculpatory or impeaching, that the state willfully or inadvertently suppressed evidence of victim Grigg's lawsuit, or that victim Grigg's lawsuit would have changed the result of his case, Petitioner has not demonstrated a violation of *Brady*. *Bagley*, 473 U.S. at 682; *Strickler*, 527 U.S. at 281-82.

Petitioner has not shown that the court of appeals' adjudication of his Grounds One and Two claims was contrary to or an unreasonable application of clearly established federal law, or that the court of appeals' decision was an unreasonable determination of the facts. 28 U.S.C. § 2254. Grounds One and Two of the Amended Petition fail on the merits and should be denied.

## V.    EVIDENTIARY HEARING

In his Amended Petition, Petitioner requests an evidentiary hearing and asserts that oral argument is necessary for the claims in the Amended Petition. (Doc. 8 at 31-35, 38-41)

Nevertheless, AEDPA imposes "an express limitation on the power of a federal court to grant an evidentiary hearing and [has] reduced considerably the degree of the district court's discretion." *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999) (internal quotation marks and citation omitted). An evidentiary hearing is "not required 'on issues that can be resolved by reference to the state court record.'" *Smith v. Mahoney*, 611 F.3d 978, 997 (9th Cir. 2010) (quoting *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994)). Also, a district court is not required to hold an evidentiary hearing where 28 U.S.C. § 2254(d) precludes relief. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011). Insofar as an evidentiary hearing on claims that were

adjudicated on the merits in state court, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181; *see also Gulbrandson v. Ryan*, 738 F.3d 976, 993 n.6 (9th Cir. 2013) (noting that the holding of *Pinholster* is also applicable to § 2254(d)(2) claims). Because review under Section 2254(d)(1) "requires an examination of the state-court decision at the time it was made[,…] the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court." *Pinholster*, 563 U.S. at 182; *see also Shoop v. Twyford*, 596 U.S. 811, 819 (2022).

On the record before the Court, Petitioner's plea was knowing, voluntary, and intelligent; Petitioner gave up his right to cross-examine witnesses by pleading guilty; and no *Brady* violation occurred with respect to disclosure of victim Grigg's civil lawsuit. Because Grounds One and Two of the Amended Petition can be resolved by reference to the state court record, which was sufficiently developed in any event, and because 28 U.S.C. § 2254(d) precludes relief on Grounds One and Two, as discussed *supra*, Petitioner is not entitled to an evidentiary hearing or oral argument on Grounds One and Two of the Amended Petition. Nor would oral argument be beneficial to the Court.

## VI. CONCLUSION

For the reasons set forth above, Amended Petition Grounds One and Two each fail on the merits. An evidentiary hearing on Grounds One and Two of the Amended Petition is unnecessary and inappropriate. Therefore, it is recommended that the Amended Petition be denied with prejudice without an evidentiary hearing and that the Clerk of Court be directed to terminate this matter.

Assuming the recommendations herein are followed in the District Judge's judgment, the undersigned recommends that a certificate of appealability be denied because jurists of reason would not find the Court's rejection on constitutional grounds of Amended Petition Grounds One and Two to be "debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Accordingly,

- 27 -

**IT IS THEREFORE RECOMMENDED** that Petitioner Roger Allen Sharp's Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 8) be denied with prejudice without an evidentiary hearing and that the Clerk of Court be directed to terminate this matter.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The parties shall have fourteen days within which to file responses to any objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 5th day of August, 2024.

_____
Honorable Deborah M. Fine
United States Magistrate Judge

- 28 -