WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roger Allen Sharp, | No. CV-23-00984-PHX-DJH |
| Petitioner, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Respondents. | |

Before the Court is Petitioner Roger Allen Sharp's Motion to Stay (Doc. 32). Petitioner asks the Court to stay a decision on his habeas petition "for one year or as needed" so that he can return to state court to exhaust a claim that the state unlawfully failed to disclose exculpatory video footage evidence and caused him to plead guilty. (*Id.* at 1–2). The Motion is fully briefed (Docs. 33, 34).

Also before the Court are Magistrate Judge Deborah M. Fine's August 5, 2024, Report and Recommendations ("R&Rs") on Petitioner's "Motion to Supplement Habeas Corpus – Claims by Citation Included" ("Motion to Supplement") (Doc. 30) and Petitioner's Amended Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 31). Judge Fine recommends that both Petitioner's Motion to Supplement (Doc. 19) and Amended Petition (Doc. 8) be denied. (Docs. 30 & 31). Apart from Petitioner's Motion to Stay, no objections to these R&Rs have been filed and the time to do so has expired.

///

I.  **Background**

   A.  **Charges, Plea, and Sentences**

In its memorandum decision denying relief on the superior court's denial of Petitioner's fourth post-conviction relief ("PCR") proceedings in Maricopa County Superior Court case number CR2014-100040-002, the Arizona Court of Appeals summarized the events leading to the charges against Petitioner:

> In December 2013, officers responded to an armed robbery call. Two victims reported being robbed at gunpoint. The suspects fled the scene in a Chevy Impala. An emergency call broadcast was made, and Officer [Sefranka] located the Impala in traffic. [Sefranka] chased the Impala until the Impala collided with [Phillip Grigg's] truck.
>
> After the crash, one of the suspects fled. The other suspect, later identified as [Petitioner], exited the driver's side of the Impala. [Petitioner] and Officer [Sefranka] engaged in a physical struggle. [Grigg] intervened, trying to tackle [Petitioner]. During the struggle, [Petitioner] "gain[ed] full control of Officer [Sefranka's] service weapon." [Petitioner] fired the weapon, wounding [Sefranka] and [Grigg]. [Petitioner] fled and entered a residential neighborhood. He kicked in the front door of a residence, and the homeowner alerted the police. Police arrested [Petitioner] in a resident's backyard.
>
> In a post-arrest interview, [Petitioner] acknowledged his participation in the armed robbery and said he accidentally shot [Sefranka] and [Grigg]. In January 2014, the State charged [Petitioner] with four counts of aggravated assault, two counts of armed robbery, two counts of attempt to commit first degree murder, and one count each of conspiracy to commit armed robbery, misconduct involving weapons, unlawful flight from law enforcement, resisting arrest, and criminal trespass.
>
> In May 2014, the police interviewed [Grigg]. He could not remember significant details from the shooting. [Grigg] "remember being in a scuffle with somebody, but did not remember any specifics nor did he remember how big the scuffle was." The State disclosed the police's interview summary report to [Petitioner's] counsel in August 2014 and the interview recording in October 2014.
>
> Consistent with its policy not to offer a plea without Division Chief approval for any case involving a firearm pointed or discharged at an officer in his or her official capacity, the State did not make a plea offer. In

> any event, [Petitioner] pled guilty to all charges in November 2014, admitting to the facts underlying each count. Relevant here, [Petitioner] admitted that he "discharged a weapon striking Officer [Sefranka]," [Grigg] "was also wounded by the discharge of the gun that [Petitioner] had gotten ahold of," and he knew or should have known that discharging the weapon was likely to cause the deaths of [Sefranka] and [Grigg]. [Petitioner] also admitted he was on felony probation during the offenses and had two prior felony convictions. In early 2015, the court sentenced [Petitioner] to concurrent and consecutive prison terms totaling 66.5 years.
>
> While serving his prison sentence, [Petitioner] learned that [Grigg] sued the City of Phoenix and the Phoenix Police Department (collectively, "the City") in December 2014 for alleged negligence during the shooting. [Grigg] had submitted a notice of claim with the City in June 2014 before [Petitioner] pled guilty and a civil complaint afterward. [Grigg's] claim notice stated in part, "Whether it was Officer [Sefranka] or [Petitioner] who shot [Grigg]," the City's gross negligence caused [Grigg's] injuries. During the civil suit's discovery, [Grigg] objected to a request for admission that [Petitioner] shot him, stating this was information he was "unaware of." [Grigg] also said during discovery that he did not know who shot him and could not admit that it was [Petitioner].

(Doc. 16-6 at 26-27). During superior court proceedings through sentencing, Petitioner was represented by counsel. (Doc. 16-1 at 13, 19, 65).

On November 25, 2014, the superior court held a change of plea hearing during which the superior court judge reviewed the charges against Petitioner, the possible sentencing range and availability of probation, special conditions of sentencing and probation, and his constitutional rights and rights of review, including that Petitioner was giving up his right against self-incrimination, his right to have a jury determine his innocence or guilt, his right to confront and cross-examine witnesses, and his right to present other evidence on his behalf. (*Id*. at 13–16, 18–63). The superior court judge told Petitioner that the lowest sentence he could receive would be "15 and three quarters" and the highest would "be somewhere" higher than 200 years. (*Id*. at 36–37). The superior court stated that Petitioner may receive a sentence whereby he would never never get out of prison. (*Id*. at 37). Petitioner affirmed his understanding of the sentencing possibilities. (*Id*.) During the change of plea hearing, Petitioner stated that

1 the factual basis for each charge against him as placed on the record by trial counsel and 2 by the prosecutor was true. He stated that no one had threatened or forced him to plead 3 guilty, and that all of his questions had been answered. (*Id*. at 47–57). The superior court 4 found that Petitioner knowingly, voluntarily, and intelligently pleaded guilty. (*Id*. at 59). 5 On February 27, 2015, the superior court sentenced Petitioner on all thirteen charges. (*Id.* 6 at 65–71).

### B. Federal Habeas Action

Petitioner's fifth post-conviction review ("PCR") proceeding was dismissed on May 25, 2024. (Doc. 16-6 at 78–81). Petitioner filed an Amended Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) ("Amended Petition") on August 2, 2023. (Doc. 8). The Amended Petition raises two grounds for relief. In Ground One, Petitioner contends that his Fifth Amendment rights were violated when the state knowingly withheld material evidence, "forcing [Petitioner] to unwillingly and unknowingly plead guilty to a crime another has pled guilty to;" and that his Sixth Amendment rights were violated when he was unable to cross-examine the police officer in his case. (*Id.* at 36–40). Ground Two states a Fourteenth Amendment claim under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In Ground Two, Petitioner argues that Phillip Grigg ("Mr. Grigg"), a victim in Petitioner's state criminal case, initiated a civil lawsuit against the City of Phoenix and the Phoenix Police Department (collectively, "City of Phoenix"), and at the time of his sentencing, the state knew of Mr. Grigg's civil lawsuit and intentionally suppressed evidence related to it. Further, Petitioner asserts that Mr. Griggs stated in the civil lawsuit that he did not know whether Petitioner or a police officer shot him; Petitioner says this was "a material fact that completely alters" Petitioner's case. (*Id.* at 31).

In their Answer to the Amended Petition, Respondents concede that claims were properly exhausted in state court but argue that Petitioner's claims are non-cognizable and fail on the merits. (Doc. 16 at 11–24).

After filing his Reply in support of the Amended Petition (Doc. 17), on June 12,

- 4 -

2024, Petitioner sought an order from the Court compelling Respondents to produce twenty discs of video footage apparently provided to Mr. Grigg in his civil lawsuit against the City of Phoenix. (Doc. 18 at 1–2). Petitioner argued in his Motion to Compel that the video footage was undisclosed *Brady* material and he had recently discovered its existence through his due diligence and with the help of another prisoner. (*Id.*) Petitioner said once he receives the footage, he will supplement the Amended Petition "upon exhaustion in the state courts and court of appeals if necessary, and will also petition court for stay as needed." (*Id*. at 2).

Petitioner also filed a "Motion to Supplement Habeas Corpus – Claims by Citation Included" (Doc. 19), in which Petitioner sought to supplement his Amended Petition to add a claim under *Napue v. Illinois*, 360 U.S. 264 (1959). Therein, Petitioner asserted that Mr. Grigg made materially false statements about who shot him. (Doc. 19 at 6). Specifically, Petitioner says Mr. Grigg initially stated he could not remember who shot him during the events leading to the charges against Petitioner, yet he later stated a police officer shot him. (*Id.*) Petitioner argues that the prosecutor knew about the false evidence and intentionally withheld the victim's contradictory statements of blame. (*Id*.) He asserts that the state's failure to disclose exculpatory evidence that the victim's statements suggested that the police officer, not Petitioner, shot the victim led him to plead guilty instead of proceeding to trial. (*Id*. at 7–8). Petitioner also argues that the newly discovered evidence would prevent a jury from finding him guilty and that the actual innocence gateway allows this Court to address his proposed *Napue* claim on the merits. (*Id*. at 8–9). In his Reply, Petitioner conceded that he could not show that his claim was meritorious but that was because the state withheld exculpatory video footage in bad faith. (Doc. 28 at 1–3).

On August 5, 2024, Magistrate Judge Fine denied Petitioner's Motion to Compel production of the video footage. (Doc. 29). In doing so, Judge Fine found that Petitioner's "general assertions" that the videos "would be exculpatory, must contain damaging evidence" or would show who controlled the weapon that shot Mr. Grigg were

insufficient and conclusory and did not establish good cause for the requested discovery. (*Id.* at 8). She also found that Petitioner had not shown the requested discovery materials may develop facts that would entitle him to habeas relief if the Court were to grant the discovery. (*Id.*) She further found that the record belied Petitioner's claim that he could not have discovered the materials sooner than his motion to compel, noting in part that his April 2022 affidavit in support of his PCR petition, he learned of Mr. Grigg's case against the City of Phoenix as early as June or July of 2020. (*Id*. citing Doc. 16-3 at 33).

In a separate Order issued the same day, Judge Fine recommended denying the "Motion to Supplement Habeas Corpus – Claims by Citation Included" ("Motion to Supplement") (Doc. 30) and Petitioner's Amended Petition with prejudice and without an evidentiary hearing. (Doc. 31).

In her R&R on the Motion to Supplement, Judge Fine found that allowing Petitioner to add a *Napue* claim would be futile. (Doc. 30). She explained that Petitioner had not exhausted the federal legal theory on which his claim was based to the Arizona Court of Appeals and he had not met the standard to show that he was actually innocent of the crimes he plead guilty to because he could not demonstrate that relief would be available on the merits of his proposed *Napue* claim. (Doc. 30 at 6–7) ("Petitioner does not demonstrate. . . that the victim's testimony was false or misleading, that the state knew that the testimony was false or misleading, or that the testimony was material."). Judge Fine also found that Petitioner had failed to explain why he could not have fully developed the arguments in his Motion to Supplement in his Amended Petition. The Amended Petition asserted that the state suppressed exculpatory evidence of the victim's lawsuit in violation of *Brady*; that the witnesses in his case provided false testimony about who shot the victim; and that the state was aware of the false testimony. (*Id*. at 7–8 citing Doc. 8 at 31–35). She therefore recommends denying the Motion to Supplement. (*Id*.)

In her R&R on the Amended Petition, Judge Fine found that Petitioner's claims failed on their merits. Her R&R concludes that Petitioner could not establish that the

Arizona Court of Appeals' last reasoned decision on Petitioner's claims was based on an unreasonable determination of the facts or was contrary to, or an unreasonable application of, clearly established federal law under 28 U.S.C. § 2254. (Doc. 31 at 21–22). She further found that nothing in the record factually supported Petitioner's contentions that he involuntarily pleaded guilty in violation of his right against self-incrimination; that non-disclosure of Mr. Grigg's civil lawsuit violated his Sixth Amendment right to confront Officer Sefranka about the civil lawsuit; or that any *Brady* violation occurred because nothing relating to Mr. Grigg's lawsuit was exculpatory or impeaching. (Doc. 31 at 26 (noting that "at the time of his change of plea and sentencing proceedings, Petitioner was already aware that victim Grigg did not know what happened or who shot him during the events leading to charges against Petitioner. Petitioner nevertheless proceeded to plead guilty.")).

In both R&Rs, Judge Fine advised the parties that her recommendation was not an order that was immediately appealable and that the parties had fourteen days from the date of service of a copy of the R&R to file specific written objections with the Court. (Doc. 30 at 8–9; Doc. 31 at 28). She advised them that failure to timely file objections may result in the acceptance of the R&R by this Court without further review. (*Id.*)

Neither party filed an objection. Instead, Petitioner filed his Motion to Stay. Petitioner's reason for requesting a stay is so that he can obtain the video footage at issue in his Motion to Compel and use this evidence to exhaust a new *Brady* claim specifically related to the video footage in state court.

The Court will first address Petitioner's Motion to Stay and then turn to the R&Rs on his Motion to Supplement and Amended Petition.

**II.     Motion to Stay**

A district court may stay a habeas petition in "limited circumstances" to allow a petitioner to present unexhausted claims to the state court without losing the right to federal habeas review pursuant to the relevant one-year statute of limitations. *Rhines v. Weber*, 544 U.S. 269, 277 (2005). *See also Blake v. Baker*, 745 F.3d 977, 981–82 (9th

Cir. 2014) (noting these circumstances are limited because "routinely granting stays would undermine the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] goals of encouraging finality and streamlining federal habeas proceedings"). Under *Rhines*, "a district court must stay a mixed petition"—that is, a petition containing both exhausted and unexhausted claims—"only if: (1) the petitioner has 'good cause' for his failure to exhaust his claims in state court; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner intentionally engaged in dilatory litigation tactics." *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008) (citing *Rhines*, 544 U.S. at 278).

*Rhines* applies only to mixed petitions, however. *See King v. Ryan*, 564 F.3d 1133, 1139–40 (9th Cir. 2009). A *Rhines* stay would be inappropriate if the claims for which a petitioner seeks a stay are technically exhausted through procedural default. *See e.g., Armstrong v. Ryan*, No. CV-15-00358-TUC-RM, 2017 WL 1152820 (D. Ariz. March 28, 2017); *White v. Ryan*, No. CV-09-2167-PHX-FJM-LOA, 2010 WL 1416054, *12 (D. Ariz. March 16, 2010) ("Because the Petition in this case contains claims that are either actually or technically exhausted, it is not a mixed Petition and *Rhines* does not apply.").

Federal courts may not grant a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is "grounded in principles of comity" as it gives the States "the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). A claim is exhausted if (1) the petitioner has fairly presented the federal claim to the highest state court with jurisdiction to consider it or (2) no state remedy remains available for the claim. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). If a federal court finds there are no remedies available in state court with respect to particular claims, then the claims are "technically" exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 732; *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007); *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

Arizona's preclusion rules "require a defendant to raise all known claims for relief in a single petition to prevent endless trial-court reviews of the same case." *State v. Anderson*, 547 P.3d 345, 350 (Ariz. 2024) (citing *State v. Diaz*, 340 P.3d 1069, 1071 (Ariz. 2014)). Rule 32 of the Arizona Rules of Criminal Procedure precludes relief for claims that do not fall within the category of claims for which a successive PCR petition is permitted. *See* Ariz. R. Crim. P. 32.1(b)–(h), 32.2(a) & (b). Specifically, Rule 32 procedurally bars relief on any constitutional claim that could have been raised on appeal or in a prior PCR petition. *See* Ariz. R. Crim. P. 32.1(a); 32.2(a)(3).[1]

Petitioner seeks a stay of this habeas action so that he can return to the state court to exhaust a *Brady* claim that the State failed to disclose the twenty (20) CDs of video footage related to the events underlying his conviction, resulting in him pleading guilty. (Doc. 32). Petitioner says he discovered the CDs' existence in June 2024 with the help of a fellow inmate while reviewing Mr. Grigg's civil court transcripts. (*Id.* at 4). Petitioner says his family is obtaining the CDs for him and upon reviewing them, he will file for a successive PCR petition because this newly discovered evidence supports his claim that the state willfully withheld material evidence from him. (*Id.* at 1). Respondents say a stay is unjustified because Petitioner has failed to demonstrate good cause for one and any claim he would make to the state court would be meritless. (Doc. 33 at 3–4).

Before applying *Rhines,* the Court must determine if Petitioner has a remedy available in state court such that his claim is not technically exhausted. *See Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (finding it is a district court's role to assess availability of state court remedy) *overruled on other grounds as recognized by Apelt v. Ryan*, 878 F.3d 800, 827–28 (9th Cir. 2017). In making that decision, a court is required

---

[1] The Ninth Circuit has held that "Arizona Rule of Criminal Procedure 32.2(a)(3) is independent of federal law and has been regularly and consistently applied, so it is adequate to bar federal review of a claim." *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012). In *Coleman*, the Supreme Court held that a state prisoner who fails to comply with state-law procedural requirements in presenting his claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. *Coleman*, 501 U.S. at 731–32; *see Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) ("An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court.").

to "assess the likelihood that a state court will accord the habeas petitioner a hearing on the merits of his claim." *Phillips v. Woodford*, 267 F.3d 966, 974 (9th Cir. 2001) (citing *Harris v. Reed*, 489 U.S. 255, 268 (1989) (O'Connor, J., concurring)).

Petitioner's *Brady* claim is a constitutional claim cognizable under Rule 32.1(a) in state court. *See Brady*, 373 U.S. at 87 (suppression of evidence by state "of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment"); *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) ("[A] defendant challenging the voluntariness of a guilty plea may assert a *Brady* claim."). So, his claim is subject to preclusion pursuant to Rule 32.2(a) and cannot be raised in an untimely proceeding. *See* Ariz. Rule Crim. Proc. 32.2(b); 32.4(a). Without the means to exhaust his *Brady* claim in state court, Petitioner's claim is "technically" exhausted, and a *Rhines* stay would be inappropriate.

Though not explicit, Petitioner essentially argues that his claim represents an exception to Rule 32.2(a)'s preclusive effect because it relies on newly discovered evidence—the video footage. The preclusive effects of Rule 32.2(a) do not apply to claims for relief based on newly discovered evidence when raised in a successive or untimely post-conviction relief proceeding, if the newly discovered material facts "probably exist and such facts probably would have changed the verdict or sentence." *See* Ariz. Rule Crim. Proc. 32.1(e). *See also United States v. Bagley*, 473 U.S. 667, 682 (1985) (this standard requires a "reasonable probability" of a different result, or, stated differently, a "probability sufficient to undermine confidence in the outcome"). To establish a claim of newly discovered material facts under Rule 32.1(e), five requirements must be met:

> (1) the motion must show that the evidence relied on is, in fact, newly discovered;
> (2) the motion must allege facts from which the court can infer due diligence;
> (3) the evidence relied on must not be merely cumulative or impeaching;
> (4) the evidence must be material to the issue involved; and
> (5) it must be evidence which, if introduced, would probably change the verdict if a new trial were ordered.

*State v. Acuna Valenzuela*, 426 P.3d 1176, 1193 (Ariz. 2018) (quoting *State v. Serna*, 807

P.2d 1109, 1110 (Ariz. 1991)).  *See also* Ariz. Rule Crim. Proc. 32.1(e)(1)–(3); *State v. Amaral*, 368 P.3d 925, 927 (Ariz. 2016).  The Arizona Supreme Court has described this ground for post-conviction relief as "disfavored" and has warned courts to proceed "cautiously" before granting new trials based on newly discovered evidence.  *State v. King*, 480 P.3d 1250 (Ariz. 2021) (citing *State v. Serna*, 807 P.2d 1109, 1110 (Ariz. 1991)).  Petitioner has the burden to establish all five requirements.  *Id.* at 1256.  The Court finds that Petitioner cannot establish that his evidence is material, would probably change the sentence or verdict if a trial were ordered, or that he has acted diligently in discovering the evidence or bringing the Rule 32.1(e) claim.

### A. Materiality and Probability

"Evidence is material if it is relevant and goes to substantial matters in dispute or has a legitimate and effective influence or bearing on the decision of the case." *State v. Orantez*, 902 P.2d 824, 827–28 (Ariz. 1995). Petitioner contends that the twenty videos that were disclosed in Mr. Grigg's civil lawsuit constitute "newly discovered evidence." The problem is that Petitioner does not have the videos or know what is on them.  In his Motion to Stay, Petitioner represents that he *intends* on obtaining the videos and then *intends* on reviewing them for exculpatory or material evidence.  But without having reviewed them, all Petitioner has presented is speculation that they contain material evidence.  Indeed, in his Reply in Support of his Motion to Supplement, Petitioner concedes that he cannot say that his Rule 32.1(e) claim would be meritorious because "it depends on what those (20) videos contain."  (Doc. 28 at 5).  Petitioner is unable, therefore, to establish that anything in the videos is material evidence or that any evidence therein would probably be grounds for a new trial.  Any allegation that the content of these videos may have impacted plea negotiations or Petitioner's decision not to go to trial is simply unsupported.

### B. Due Diligence

Notably, in denying Petitioner's Motion to Compel production of the videos, Judge Fine found that Petitioner had not been diligent in obtaining the videos for review.

She said the record belied Petitioner's claim that he could not have discovered the materials sooner than filing his Motion to Compel, noting, in part, that Petitioner's April 2022 affidavit in support of his state post-conviction review ("PCR") petition stated that he learned of Mr. Grigg's case against the City of Phoenix as early as June or July of 2020. (*Id*. citing Doc. 16-3 at 33). The Court's own review of the record reinforces this finding. In his April 2022 affidavit in support of a PCR Petition, Petitioner swore that:

> [i]n June or July of 2020, while serving my prison sentence, I learned that Phillip Grigg, one of the victims in this case, had entered into a civil settlement with the City of Phoenix and the Phoenix Police Department, arising from the underlying facts in this case. That lawsuit was filed in Maricopa County Superior Court (CV2014-015191) and was settled in Grigg's favor in April 2018. I learned about the settlement from Laura Reynolds, who had recently discovered the lawsuit while researching my case.

(Doc. 16-3 at 33). Petitioner also swore that:

> [o]n November 9 2020, I contacted Reynolds and asked her to obtain the documents from the civil case and to mail them to me so I could read them. *I received a large box containing over 7,000 pages of documents on November 30, 2020.*

(*Id*.) (emphasis added). The footage that Petitioner seeks and that he presumes contains exculpatory images of his crimes was referenced in these civil case documents that he received on November 30, 2020. (*See* Doc. 18 at 6).[2] So, it cannot be said that Petitioner acted diligently in seeking the videos almost four years later. To the contrary, had Petitioner exercised due diligence in reviewing the civil case documents in December of 2020, he could have discovered the possible existence of the video footage, obtained and reviewed it, and potentially raised his claim to the state court. He did not. His lack of diligence in obtaining and reviewing the videos further supports denying a *Rhines* stay

---

[2] Exhibit A to Petitioner's Motion to Compel contained a page taken from a filing purportedly from Mr. Grigg's civil lawsuit. (Doc. 18 at 6). In a footnote on that page, counsel for Mr. Grigg writes," "Finally, way past the initial disclosure deadline and just a couple days before Defendant filed their Motion, the City dumped more than twenty (20) disc containing tons of surveillance footage pertaining to the subject incident. Of course, even though Defendant has had this information for years, they did not disclose in any, shape or form what each disc specifically depicts, forcing Plaitniffs to review every second of this footage." (*Id*. at n.2).

- 12 -

here. *See also* Ariz. R. Crim. P. 32.2(b) ("If . . . meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated . . . in a timely manner, the notice shall be summarily dismissed.")

Petitioner has not provided the Court with facts establishing what the videos show or how they had any impact on plea negotiations or the investigation of his crimes. He therefore cannot establish that any "newly discovered" evidence via the video footage is material or would probably result in a hearing on his Rule 32.1(e) claim or a new trial. Petitioner also cannot establish that he acted with due diligence in pursuing the videos themselves. Petitioner's Rule 32.1(e) claim is therefore precluded and considered technically exhausted. A *Rhines* stay is therefore unnecessary and Petitioner's request will be denied.

### III. Judge Fine's R&Rs on the Motion to Supplement and Amended Petition

As noted, apart from his Motion to Stay, which is addressed above, Petitioner has not filed objections to either of the Magistrate Judge's R&Rs. Respondent also has not filed objections. The time for objections has long expired. Absent objections, the Court is not required to review the findings and recommendations in the R&Rs. *See Thomas v. Arn*, 474 U.S. 140, 149 (1989) (noting that the relevant provision of the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), "does not on its face require any review at all . . . of any issue that is not the subject of an objection"); *Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003) (same); Fed.R.Civ.P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.").

Nonetheless, the Court has reviewed Judge Fine's well-reasoned R&Rs and agrees with their findings and recommendations. The Court will, therefore, accept both R&Rs and deny Petitioner's Motion to Supplement and dismiss his Amended Petition. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."); Fed.R.Civ.P. 72(b)(3) (same).

/ / /

Accordingly,

**IT IS ORDERED denying** Petitioner's Motion to Stay (Doc. 32).

**IT IS FURTHER ORDERED** that the R&Rs (Docs. 30 and 31) are **accepted** and **adopted** as the Orders of this Court. Petitioner's "Motion to Supplement Habeas Corpus – Claims by Citation Included" (Doc. 30) is **denied**. Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 8) is **denied with prejudice without an evidentiary hearing.** Petitioner's request for a Certificate of Appealability is also **denied**.

**IT IS FINALLY ORDERED** that the Clerk of Court shall terminate this action and enter judgment accordingly.

Dated this 27th day of February, 2025.

Honorable Diane J. Humetewa
United States District Judge